**TEN TAXPAYERS CITIZEN GROUP, et al., Plaintiffs,**

v.

**CAPE WIND ASSOCIATES, LLC, Defendant.**

**No. CIV.A.02–CV–12046–JL.**

United States District Court, D. Massachusetts.

Aug. 19, 2003.

Timothy J. Dacey, III, Goulston & Storrs, PC, Boston, for Cape Wind Associates, Defendant.

John W. Spillane, Worcester, for Cape Cod Marine Trades Association, Inc., Ten Taxpayer Citizens Group, Raoul D. The Massachusetts Boating and Yacht Club Association, Inc., Plaintiffs.

## MEMORANDUM

TAURO, District Judge.

This case may well be the first skirmish in an eventual battle over the construction by Defendant, Cape Wind Associates, LLC ("Cape Wind"), of a windmill farm in Nantucket Sound. But, what is at issue here is the validity of the permit process for building a single tower in the Sound to record scientific measurements. Plaintiffs claim that the permit obtained by the builder, Cape Wind, was invalid. Cape Wind disagrees and moves for dismissal.

## BACKGROUND

In late 2002, Cape Wind sought to build a temporary scientific measurement tower in an area of Nantucket Sound called Horseshoe Shoals. Horseshoe Shoals is a shallow region in the Sound more than three miles off the coasts of both Cape Cod and Nantucket. The tower, called a scientific measurement devices station or SMDS, is intended to collect data for five years to determine if this is a feasible location for a planned permanent windmill farm. That farm would include 170 windmills and be visible from shore.

Cape Wind went through a process that culminated on August 19, 2002 in the United States Army Corps of Engineers granting a permit under § 10 of the Rivers and Harbors Act of 1889.[1] This permit, Number 199902477, contemplates building a tower rising almost 200 feet above sea level, supported by three piles driven approximately 100 feet into the sea floor. The construction site is located in water approximately thirteen feet deep.[2]

Cape Wind originally planned to begin construction on October 7, 2002. The start date was postponed because Plaintiffs sought and received a temporary restraining order from Barnstable Superior Court on September 24. Cape Wind removed the case to federal court, based on federal question jurisdiction. After the restraining order expired, Cape Wind began building the tower on October 27.

Plaintiffs claim in this suit that Cape Wind should not be allowed to construct the tower without first complying with Massachusetts's fisheries regulations. According to Plaintiffs, Chapter 91 of the Massachusetts General Laws required Cape Wind to secure a license before engaging in tower construction. Defendant moves for dismissal of Plaintiffs' suit, citing the federal government's exclusive jurisdiction over waters more than three miles from shore.

---

1. 33 U.S.C. §§ 401 et seq.

2. The permit references the sea floor having a MLLW elevation of negative thirteen, meaning that the average water height above the sea floor of the two low water marks during a day with two low tides is thirteen feet. Obviously, the water depth changes according to the tides.

## DISCUSSION

Cape Wind now moves to dismiss Plaintiffs' complaint as a matter of law. Accordingly, the court must accept as true the facts alleged in the complaint, construe all reasonable inferences in favor of the plaintiff, and determine whether the plaintiff can recover under any cognizable legal theory.[3]

There is no factual dispute between the parties that Cape Wind has received a permit from the Army Corps of Engineers, but not a license from the Commonwealth of Massachusetts. So the essential question is one of law: whether Cape Wind's activity requires such a license. This court concludes that it does not.

■ As noted from the bench in open court, the two *United States v. Maine* Supreme Court cases[4] work together to confirm the federal government's exclusive jurisdiction over the seabed for that portion of Nantucket Sound more than three miles from the coast. *Maine I* set forth the principle that the seabed of the Atlantic Ocean within the United States' territorial waters, but more than three miles from shore, is under exclusive federal jurisdiction.[5] *Maine II* made clear that the pocket of Nantucket Sound outside the three mile coastal zone, including Horseshoe Shoals, is subject to this general rule.[6] Plaintiffs do not contest this conclusion.

But Plaintiffs argue that, for certain purposes, the federal government ceded its jurisdiction over the pocket of federal waters in Nantucket Sound to Massachusetts. Specifically, Plaintiffs claim that the 1983 amendment to the Magnuson–Stevens Fishery Conservation and Management Act[7] delegated regulatory authority over the care of the entire Nantucket Sound fishery to the Commonwealth. The Magnuson Act, as amended in 1983, states:

> For the purposes of this chapter ... the jurisdiction and authority of a State shall extend—(A) to any pocket of waters that is adjacent to the State and totally enclosed by lines delimiting the territorial sea of the United States ...; [and] (B) with respect to the body of water commonly known as Nantucket Sound, to the pocket of water west of the seventieth meridian west of Greenwich.[8]

Plaintiffs cite Title 310 of the Code of Massachusetts Regulations as the Commonwealth's use of this authority: "[A]n application for license or license amendment shall be submitted to the Department for ... any construction, placement, excavation, addition, improvement, maintenance, repair, replacement, reconstruction, demolition, or removal of any fill or structures not previously authorized, or for which a previous grant or license is not presently valid."[9]

■ Plaintiff's argument ignores the limits inherent to the Magnuson Act. The section that Plaintiffs understand as a delegation of federal jurisdiction begins with language of limitation.[10] Congress did not

---

3. *See Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16 (1st Cir.1998).

4. 420 U.S. 515, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975) (*Maine I*) and 475 U.S. 89, 106 S.Ct. 951, 89 L.Ed.2d 68 (1986) (*Maine II*).

5. *Maine I,* 420 U.S. at 522, 95 S.Ct. 1155.

6. *Maine II,* 475 U.S. at 103–04, 106 S.Ct. 951.

7. 16 U.S.C. § 1800 et seq.

8. 16 U.S.C. § 1856(a)(2).

9. Mass. Regs.Code tit. 310, § 9:05(a).

10. *See* 16 U.S.C. § 1856(a)(2) (delegating authority over Nantucket Sound to Commonwealth "[f]or the purposes of this chapter").

delegate its complete sovereign authority over the pocket of federal waters in Nantucket Sound to the Commonwealth, but only that part necessary to establish consistent fishing regulations throughout the Sound. As Cape Wind points out in its papers, the Act regulates who may fish,[11] by what means they may fish,[12] and how much they may fish.[13]

And so, with respect to fishing in the limited area of Nantucket Sound, the Commonwealth has exclusive regulatory jurisdiction.[14] But, nothing in the Act supports the proposition that regulating non-fishing activities simply for the protection of fish falls under the Commonwealth's jurisdiction.

Had Congress intended to entrust Massachusetts with the task of policing the entire Nantucket Sound for environmental disturbances that could impact fishing, it would have done so. Instead, Congress used limiting language, compelling the conclusion that Massachusetts has no jurisdiction to regulate the construction of a scientific research tower in federal waters. In the absence of this jurisdiction, the Commonwealth cannot require a license, and Plaintiffs' claim fails.

## CONCLUSION

As the construction of a scientific testing tower does not fall within the Commonwealth's jurisdiction to regulate fisheries, no license from the Commonwealth was required. Plaintiffs' case, therefore, is DISMISSED.

AN ORDER WILL ISSUE.

---

**11.** 16 U.S.C. §§ 1821–24.

**12.** 16 U.S.C. §§ 1826–1826g.

**13.** 16 U.S.C. §§ 1851–1854.

**14.** *See Davrod v. Coates,* 971 F.2d 778, 786–87 (1st Cir.1992).